Per Curiam.
*51 {¶ 1} Respondent, Stephen Wallace Barns, of Granville, Ohio, Attorney Registration No. 0065571, was admitted to the practice of law in Ohio in 1995.
{¶ 2} In December 2017, relator, Columbus Bar Association, charged Barns with *924 professional misconduct arising from his representation of a client in the formation and operation of a corporation. The parties stipulated to the admission of facts and misconduct, aggravating and mitigating factors, and exhibits; agreed to dismiss three of the eight alleged rule violations; and jointly recommended that Barns be publicly reprimanded for his misconduct.
{¶ 3} After a hearing before a panel of the Board of Professional Conduct, the panel issued a report adopting the parties' stipulations of facts and exhibits-including their agreement to dismiss three alleged rule violations. The board adopted the panel's findings of fact and conclusions of law, and upon consideration of the applicable aggravating and mitigating factors and the sanctions imposed by this court for comparable misconduct, it recommended that we publicly reprimand Barns. Neither party has objected to the board's report and recommendation.
{¶ 4} Based on our independent review of the record, we adopt the board's findings of misconduct and recommended sanction.
Background
{¶ 5} In October 2009, Barns was a solo practitioner who promoted his law practice as being capable of providing legal representation in matters that included business formation and intellectual-property matters. At that time, Mark Plaskow hired Barns to form a corporation to protect, finance, and commercialize certain medical intellectual property that Plaskow had created.
{¶ 6} Barns submitted initial articles of incorporation for Plaskow's company, American Health Technology Corporation ("AHT"), to the secretary of state on October 5, 2009. Plaskow and Barns were the two founding members of the company. Plaskow was the initial director and also served as the chairman of the board and chief technology officer. Joseph Borovsky served as the company's president and chief executive officer. Barns served as the statutory agent and provided legal services to Plaskow and AHT in connection with business and intellectual-property matters and was issued shares of common stock in the company at its formation.
*52 Misconduct
Count One
{¶ 7} Barns was appointed as the chief legal officer of AHT on January 1, 2010, and served in that capacity until May 1, 2012-but Plaskow and the corporation were never his only clients. Barns was responsible for all of the usual and customary services rendered by an attorney in that role, including the handling of all business and legal affairs of the corporation and the preparation, completion, and maintenance of AHT's corporate records and books. Although AHT attempted to comply with some of Ohio's required corporate formalities, it did not fulfill all of its statutory obligations. For example, the company held an organizational meeting after its incorporation, but Barns did not formally record the actions taken at that meeting as required by R.C. 1701.10(B) or maintain a complete set of corporate records and minutes as required by R.C. 1701.37. In fact, he maintained just one set of minutes, that from AHT's March 15, 2010 meeting. And although the company issued stock, Barns did not prepare stock-subscription agreements, nor did he create stock certificates as required by R.C. 1701.24.
{¶ 8} At his disciplinary hearing, Barns testified that before he represented Plaskow, he had never organized a corporate structure for anyone other than himself. He admitted that he entered an area of law that he knew nothing about and in which he was not competent to practice.
*925 {¶ 9} The parties stipulated and the board agreed that this conduct violated Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation to a client).
Count Two
{¶ 10} In May 2011, while serving as AHT's president and chief executive officer, Borovsky filed initial articles of incorporation for World Health Technology, Inc. ("WHT"), and issued shares of WHT stock to Barns. Later that month, Plaskow decided to terminate Borovsky's employment, and Barns drafted a severance agreement on behalf of AHT. Despite knowing that Borovsky was represented by Borovsky's son, who was an attorney in another state, Barns negotiated the terms of the severance agreement directly with Borovsky. He also executed a stock-swap agreement with Borovsky, which provided that he would transfer his WHT stock to Borovsky in exchange for Borovsky's shares of AHT stock.
{¶ 11} The parties stipulated that this conduct violated Prof.Cond.R. 4.2 (prohibiting a lawyer from communicating about the subject of the representation with a person the lawyer knows to be represented by another lawyer unless the *53 lawyer has the consent of the other lawyer or is authorized by law or a court order).
Count Three
{¶ 12} In late 2011, Barns drafted and entered into an agreement with AHT under which he became an employee of the company. The agreement provided that he would receive a salary from the company as compensation for his work as the chief legal officer and that he would continue to be paid separately for legal services related to patent applications requested by Plaskow and AHT. Despite the existence of that contract, the company never paid Barns a salary. Instead, he continued to bill the company through his law firm, and he was paid as an independent contractor. Barns also received shares of AHT stock as compensation for his work at the company, but he did not provide AHT with written confirmation of the terms of that compensation or the desirability of seeking the advice of independent counsel regarding the transaction, nor did he obtain the company's informed consent to the essential terms of the transaction in writing. The parties and board agreed that this conduct violated Prof.Cond.R. 1.8(a) (prohibiting a lawyer from entering into a business transaction with a client or knowingly acquiring an ownership, possessory, security or other pecuniary interest that is adverse to a client unless the client is advised in writing of the desirability of obtaining independent legal counsel and the terms of the transaction are fair, reasonable, and fully disclosed in a writing signed by the client).
Count Four
{¶ 13} When Plaskow initially retained Barns in 2009, Barns maintained professional-liability insurance. At some point during that representation, Barns's coverage lapsed, but he failed to notify his existing clients, including Plaskow and AHT, of that fact. He also failed to notify new clients that he did not carry professional-liability insurance. Barns admits that his conduct violated Prof.Cond.R. 1.4(c) (requiring a lawyer to inform the client if the lawyer does not maintain professional-liability insurance of at least $100,000 per occurrence and $300,000 in the aggregate and obtain a signed acknowledgment of that notice from the client) and 1.4(c)(1) (requiring a lawyer to maintain a copy of a client's signed acknowledgment that the attorney does not maintain professional-liability insurance for five years after the termination of the representation of the client).
*926 Sanction
{¶ 14} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.
*54 {¶ 15} The sole aggravating factor present is that Barns committed multiple offenses. See Gov.Bar R. V(13)(B)(4). As mitigating factors, the parties stipulated and the board agreed that Barns has no prior discipline, did not act with a dishonest motive, demonstrated a cooperative attitude toward the disciplinary proceedings, and submitted five letters attesting to his good character. See Gov.Bar R. V(13)(C)(1), (2), (4), and (5). The board also noted that Barns settled a malpractice action that Plaskow brought against him and that he owes no restitution as a result of his misconduct.
{¶ 16} The board recommends that we adopt the parties' stipulated sanction and publicly reprimand Barns for his misconduct. To support that recommendation, the board cited six cases in which we publicly reprimanded attorneys who engaged in comparable misconduct. For example, in Columbus Bar Assn. v. Bhatt, 133 Ohio St.3d 131, 2012-Ohio-4230, 976 N.E.2d 870, we publicly reprimanded an attorney who neglected the legal matters of two clients, failed to keep those clients reasonably informed about the status of their legal matters, and failed to notify them that his professional-liability insurance had lapsed for several months during his representation of them.
{¶ 17} In Akron Bar Assn. v. Freedman, 128 Ohio St.3d 497, 2011-Ohio-1959, 946 N.E.2d 753, we publicly reprimanded an attorney who failed to reasonably communicate with a husband and wife who were his clients, failed to inform them that he did not maintain professional-liability insurance, and failed to advise them that they might be entitled to a refund of all or part of their flat fee.
{¶ 18} And in Lorain Cty. Bar Assn. v. Godles , 128 Ohio St.3d 279, 2010-Ohio-6274, 943 N.E.2d 988, we publicly reprimanded an attorney who failed to keep a client informed about the status of the client's legal matter, failed to explain matters to the extent necessary to permit the client to make informed decisions regarding the representation, failed to promptly respond to the client's reasonable requests for information, and failed to inform the client that the attorney did not maintain professional-liability insurance.
{¶ 19} We adopt the board's findings of fact and agree that Barns's conduct violated Prof.Cond.R. 1.1, 1.4(c), 1.4(c)(1), 1.8(a), and 4.2. Having considered the single aggravating factor, multiple mitigating factors, and the sanctions we have imposed for comparable misconduct, we agree that a public reprimand is the appropriate sanction in this case.
{¶ 20} Accordingly, Stephen Wallace Barns is publicly reprimanded for the above-described misconduct. Costs are taxed to Barns.
Judgment accordingly.
O'Donnell, Kennedy, French, and DeWine, JJ., concur.
Fischer, J., concurs in part and dissents in part, with an opinion joined by O'Connor, C.J., and DeGenaro, J.